IN RE INTEREST OF J.H.L., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, v. R.L. AND J.L., APPELLANTS.
340 N.W.2d 412

Filed November 18, 1983. Nos. 83-165, 83-304.

Robert G. Hays, for appellants.

Michael G. Heavican, Lancaster County Attorney, and Mary L. Thramer, for appellee.

Mark Brown of Muffly, Lott & Oglesby, guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The State of Nebraska commenced this action by the filing of a petition in the separate juvenile court of Lancaster County, Nebraska, seeking to have a minor, J.H.L., declared a juvenile under the jurisdiction of the separate juvenile court, pursuant to the provisions of Neb. Rev. Stat. § 43-247 (Cum.

Supp. 1982). Following a hearing, the separate juvenile court determined that it had jurisdiction over the minor child pursuant to the provisions of § 43-247 and that, in particular, the minor child lacked proper parental care "by reason of the fault or habits of his parents." The court did not terminate parental rights. Instead, it ordered that the child be placed in the temporary legal custody of the Lancaster County Division of Public Welfare for placement in an approved foster home. The parents were given reasonable rights of visitation, to be arranged by the Child Protective Services caseworker. The court also ordered the Lancaster County Division of Public Welfare to prepare a "social history" for the court's consideration at a dispositional hearing set by the court. Following that dispositional hearing, the court ordered that the minor child remain in the temporary legal custody of the Lancaster County Division of Public Welfare for placement in an approved foster home and that the parents correct the conditions of neglect which resulted in placing the child in foster care.

The parents have now appealed, assigning three errors. They are: (1) The court erred in finding that the appellants had not acted in the child's best interests; (2) The court erred in finding that the parents are at fault for their shortcomings in parenting skills; and (3) The court erred in finding that the parents had the option of remaining together but chose, instead, to act against the advice of professionals in requesting that their child be placed in long term foster care.

While the parents assign as their first error that the court did not act in the child's best interests, in fact, the record amply supports the court's finding. The evidence, as reflected by the record, discloses that at the time the child was born the parents were living in a supervised apartment made available through the Lancaster Office of Mental Retardation (LOMR). Under this arrangement LOMR clients

maintain their own apartments, with a resident manager available in the complex to help develop independent living skills. The record further discloses that for the first several months of the child's life, he was in a foster home, apparently because of the parents' inability to care for an infant. During that time, LOMR worked with the parents on developing parenting skills.

After the child was returned to his parents, the family continued to reside in the supervised apartment until June of 1981, when they moved into an extended-family home. This move was made primarily because the parents were experiencing increased difficulty with caring for the child's needs. In an extended-family home the parents and the child reside with a person who is available to provide supervision and other assistance as needed, on a continuous basis. The parents and the child resided in the extended-family home for about 18 months. During that time, the parents had difficulty raising the child but were assisted by the individual in whose home they resided. The parents then left the extended-family home and moved back into an independent-living apartment. They moved back because the father wished to leave the restrictive environment of the extended-family home and be more independent. The record was clear that by moving out of the extended-family home and into an independent-living unit the parents were no longer able to care or provide for their child, resulting in the child needing foster care. As we have already indicated, while the parents object to the action taken by the court, they do not seriously argue that it was wrong, and, indeed, examination of the record discloses that it was not.

The parents' principal argument is that the court should not have found that the condition which resulted in their child being placed in foster care was their fault. Rather, they argue the court should have found that the condition was due to their men-

tal deficiencies, and therefore not their fault. Apparently, the parents believe that even though the court has not yet terminated their parental rights, the ability to terminate these rights will be made easier by declaring that the problem is their fault. We believe that such fear is not well founded. Whether the condition is due to the fault of the parents or without the fault of the parents will not significantly affect whether their parental rights are ultimately terminated. Even if the condition is without the fault of the parents, their parental rights may be terminated if their mental condition giving rise to the problem will continue for an extended period of time. Therefore, it is in the child's best interests that the parental rights be terminated and the child be placed for adoption. In the case of *In re Interest of Fant*, 214 Neb. 692, 695, 335 N.W.2d 314, 316 (1983), we recently said: "Where a parent is unable to discharge parental responsibilities because of mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged and indeterminate period, parental rights may be terminated if such action is in the best interests of the child." To the same effect see *In re Interest of Wanek*, 212 Neb. 394, 322 N.W.2d 803 (1982).

Furthermore, we believe that the trial court's determination that the conditions which existed were due to the fault of the parents was fully supported by the record. The trial court made the following observations during trial: "The parents have a responsibility to make use of whatever services are necessary to care for their child. That situation is no different than it would be for any other parent who perhaps would have a skill for a particular job but didn't want to do any other job, other jobs were available, but a parent cannot say that I will only do it this way and that is the only way I will do it. If there are other ways of doing the job, the parent's primary responsibility is to the child. . . . If a per-

son says I will only do one type of work and nothing else and will not support my family unless I get this type of job and the question would be, is the parent neglectful of the child and I would say that it is clear that the parent would be neglectful to the child. To the same way, Mr. and Mrs. [L.] have a method by which they can care for their child in a type of supervised living situation and they have chosen not to do it that way. The evidence is clear that they need supportive services." Indeed, the record is clear that if the parents would return to the extended-family home their child could be returned to them and would not have to be placed in a foster home. The parents have voluntarily chosen to do otherwise because they have determined that having a particular lifestyle available in an independent-living apartment is of greater value than having their son. Their mental deficiencies may not be their fault, but their choice of where they live is one made freely by the parents. It is that free choice which results in the child being placed in foster care, and their right and ability to exercise a free choice in changing that condition would bring their son out of foster care and back to them. The child's condition, therefore, is their fault. We believe that the court was correct in finding that the condition which required the child to be placed in foster care was the parents' fault.

The judgment of the trial court is in all respects affirmed.

AFFIRMED.